***********
Upon review of all of the competent evidence of record with references to the errors assigned and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, the Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between the employer and the employee at all times relevant to this matter.
3. The carrier on the risk was Sedgwick of New York.
4. Plaintiff's average weekly wage was $604.00, which yields a compensation rate of $402.68.
5. Medical records marked as Stipulated Exhibit 1 were received into evidence.
6. The deposition of Werner C. Brooks, M.D., was received into evidence.
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a 42-year-old female who has been employed with defendant employer since February 1993.
2. During the time period of February 1993 through the end of 1995, plaintiff worked in the secondary dye cast department for defendant-employer. Plaintiff's job duties in this department required her to use her shoulders to reach in and remove light housings, weighing one-half to two pounds or more from a mold, to raise the housings and strike them against a hard surface to break away overflow and then to store the housing materials. Additionally, plaintiff had to use a shovel and pick up the waste materials and discard them. These actions were repeated 100-200 times each work shift.
3. During the time period of January 1996 through August 2000, plaintiff worked in the wiring department. Plaintiff's responsibilities in the wiring department required her to use her shoulders to reach upward and pull down a mechanical driver that was located on a pulley/spring system overhead and to screw plates into the light. In order to perform her job, plaintiff had to reach up, pull the driver down with the arm she was using, press the driver down onto the screw, drive the screw into a plate, and then release the driver. Plaintiff kept constant tension on the driver to prevent the driver from springing back. This motion was repeated many times during her work shift.
4. Plaintiff worked in the office of defendant-employer from August 2000 until October 2000.
5. During the period from October 2000 through March 2001, plaintiff worked in the ballast department. To perform her job in the ballast department, plaintiff was required to use her shoulders and arms to climb ballast racks, reach into the racks and pull light ballasts that weighed 2-20 pounds from the racks, and carry the ballasts down to her work station where they were loaded onto a carrier. This procedure was repeated throughout her shift and she was required to use her shoulders repeatedly throughout the day loading and unloading trays.
6. In December of 2000, while working in the ballast department, plaintiff began to have pain in her right shoulder. Plaintiff spent some time out of work, but when she returned to work the pain returned.
7. In March of 2001, plaintiff returned to the dye cast department.
8. Plaintiff came under the care of Dr. Werner Brooks in April 2001, who diagnosed her as suffering from either tendinopathy or an injury to her right rotator cuff. Conservative care failed and surgery to repair a rotator cuff tear and to remove a bone spur was performed on plaintiff's right shoulder on August 1, 2001.
9. Subsequent to surgery plaintiff was excused from work until November 11, 2001 when she returned to work with restrictions that limited her lifting to no more than 10 pounds and no lifting above shoulder level.
10. Dr. Brooks found that plaintiff reached maximum medical improvement on December 18, 2001 and released her to full duty with permanent restrictions of no overhead work, forty hour work weeks and no lifting over 15 pounds.
11. As a result of the injury and surgery, plaintiff sustained a 20% permanent partial impairment rating to her right shoulder.
12. During her recovery from the right shoulder surgery, plaintiff began to have pain in her left shoulder and was eventually treated by Dr. Brooks for her left shoulder pain.
13. Dr. Brooks testified and the Commission finds that the repetitive motions required in plaintiff's jobs placed her at a greater risk of developing the type of shoulder problems for which Dr. Brooks treated plaintiff than the general public, and that her repetitive job duties significantly contributed to the condition of both shoulders.
14. On January 25, 2002, plaintiff was working at her work station using a mechanical driver with her left hand in the same manner she used it in the wiring department. Two of the drivers were hanging very close together and as plaintiff tried to move one of them, the driver became caught. Plaintiff's left shoulder and arm were jerked upward, causing immediate pain and discomfort in her shoulder. The action of the driver catching and jerking plaintiff's shoulder was an untoward event that was not expected or designed by plaintiff and was not a part of her normal job duties.
15. Plaintiff reported the injury and came under the care of Dr. Brooks for this injury. Conservative treatment failed and surgery was performed on July 10, 2002 for a left shoulder impingement.
16. As a result of the injury of January 25, 2002 and the resultant surgery, plaintiff was unable to work from July 10, 2002 through August 19, 2002. Plaintiff has continued to work for defendant-employer since August 19, 2002.
17. Plaintiff reached maximum medical improvement on September 6, 2003 from her left shoulder injury with permanent restrictions of no overhead work, forty hour work weeks and no lifting over 15 pounds.
18. As a result of the injury on January 25, 2002 and resulting surgery, plaintiff sustained a 15% permanent partial impairment rating to her left shoulder.
19. On February 11, 2002 plaintiff filed a Form 18 giving notice of an injury by accident on January 25, 2002, which is I.C. File Number 213539. Plaintiff filed a second Form 18 on October 3, 2002 alleging that she sustained an occupational disease in both shoulders as the result of repetitive work duties, which is I.C. File Number 298782. Defendants denied both claims which were consolidated for hearing purposes.
20. During the time period of August 1, 2001 through November 11, 2001 and July 10, 2002 through August 19, 2002, plaintiff received payments pursuant to the short-term disability policy of defendant-employer.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. As a result of the repetitive nature of her job duties, plaintiff sustained a repetitive occupational disease to both shoulders, which was caused by and due to causes and conditions characteristic of and peculiar to plaintiff's employment with defendants. Plaintiff's shoulder condition is not an ordinary disease of life to which the general public not so employed is equally exposed and is therefore a compensable occupational disease. N.C. Gen. Stat. § 97-53(13); Booker v. Medical Center,297 N.C. 458, 256 S.E.2d 189 (1979).
2. As the result of the occupational disease, plaintiff was temporarily totally disabled from any employment and is entitled to temporary total disability compensation at the rate of $402.68 per week for the period August 1, 2001 through November 11, 2001. N.C. Gen. Stat. § 97-29.
3. As the result of the occupational disease, plaintiff is entitled to permanent partial disability compensation at the rate of $402.68 per week for 48 weeks for the 20% permanent functional impairment to her right shoulder. N.C. Gen. Stat. § 97-31(13).
4. On January 25, 2002, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendants that resulted in a impingement injury in her left shoulder. N.C. Gen. Stat. §97-2(6).
5. As the result of the compensable injury by accident, plaintiff was temporarily totally disabled from any employment and is entitled to temporary total disability compensation at the rate of $402.68 per week for the period July 10, 2002 through August 19, 2002. N.C. Gen. Stat. §97-29.
6. As the result of the compensable injury by accident on January 25, 2002, plaintiff is entitled to permanent partial disability compensation at the rate of $402.68 per week for 36 weeks for the 15% permanent functional impairment to her left shoulder. N.C. Gen. Stat. § 97-31(13).
7. Plaintiff is entitled to have defendants pay for all medical treatment arising from the occupational disease in both shoulders and from the January 25, 2002 injury by accident, to the extent such treatment tends to effect a cure, provide relief and/or lessen plaintiff's disability pursuant to N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff temporary total disability compensation at the rate of $402.68 per week for the periods from August 1, 2001 through November 11, 2001 and from July 10, 2002 through August 19, 2002, with appropriate credit given for any short-term disability payments made by defendants during these time periods. This amount has accrued and shall be paid in a lump sum, subject to the attorney's fee approved below.
2. Defendants shall pay plaintiff permanent partial disability compensation at the rate of $402.68 per week for 48 weeks for the 20% permanent partial disability sustained to her right shoulder and for 36 weeks for the 15% permanent partial disability sustained to her left shoulder. This amount has accrued and shall be paid in a lump sum, subject to the attorney's fee approved below.
3. Defendants shall pay all medical expenses incurred by plaintiff as a result of the repetitive injuries to her shoulders and the January 25, 2002 compensable injury by accident to her left shoulder. The approved medical expenses include treatment by Dr. Brooks, who is approved as plaintiff's authorized treating physician for her compensable shoulder injuries.
4. A reasonable attorney's fee of 25% of the compensation awarded plaintiff in paragraphs 1 and 2 of this Award is hereby approved to be deducted from the sums due plaintiff and paid directly to her counsel.
5. Defendants shall pay an expert witness fee in the amount of $375.00 to Dr. Brooks, to the extent the same has not already been paid.
6. Defendants shall pay the costs.
This the 5th day of January 2005.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER
LKM/mlb